UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

---

| | |
|---|---|
| IN RE: DePUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION § § § § § | MDL Docket No.<br><br>3:11-MD-2244-K |
| This Document Relates to:<br>**Stephen H. Briggs**<br>v.<br>**DePuy Orthopaedics, Inc., et al** § § § § § § | |

---

| | |
|---|---|
| STEPHEN H. BRIGGS § § § | |
| Plaintiff, § § | |
| V. § § | Cause No. 3:16-cv-2745-K |
| DePUY ORTHOPAEDICS, INC., DePUY, INC., DEPUY INTERNATIONAL LIMITED, JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON INTERNATIONAL, § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COMES NOW STEPHEN H. BRIGGS, PLAINTIFF herein, complaining of DEPUY ORTHOPAEDICS, INC., DEPUY, INC., DEPUY INTERNATIONAL LIMITED, JOHNSON & JOHNSON, JOHNSON & JOHNSON SERVICES, INC., AND JOHNSON & JOHNSON INTERNATIONAL, DEFENDANTS and for causes of action alleges as follows:

## PARTIES

1. Plaintiff Stephen H. Briggs states and brings this civil action before the Court for the United States District Court for the Northern District of Texas as a related action in the matter entitled IN RE: DePUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION, MDL No. 2244. Plaintiff is filing this complaint directly in the Northern District of Texas as permitted by Case Management Order No. 1 of this Court. Plaintiff is a citizen and resident of Dry Fork, Pittsylvania County, Virginia.

2. DEPUY ORTHOPAEDICS, INC. (hereinafter "DePuy" or "Defendant") is, and at all times material hereto was, a corporation organized under the laws of the State of Indiana, with its principal place of business in Indiana, registered to do business in Texas, and may be served with process by serving its registered agent for service, CT Corporation System, at 350 N Saint Paul St, Ste 290, Dallas, TX 75201-4234. Defendant is, and at all times material hereto, was a citizen of Indiana.

3. DEPUY, INC. was, at all times material hereto, a corporation organized under the laws of the State of Indiana, with its principal place of business in Indiana, registered to do business in Texas, and may be served with process by serving its registered agent for service, CT Corporation System, at 350 N Saint Paul St, Ste 290, Dallas, TX 75201-4234. Defendant is, and at all times material hereto, was a citizen of Indiana.

4. DEPUY INTERNATIONAL LIMITED was, at all times material hereto, a foreign corporation with its principal place of business in Leeds, United Kingdom who designed, manufactured and distributed orthopaedic implants, including the Pinnacle hip system at issue in this case, in the United States, including the states of California and Texas, such that this court's

exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. DEPUY INTERNATIONAL LIMITED may be served with process by serving it at St. Anthony's Road, Beeston, Leeds West Yorkshire, LS11 8DT, United Kingdom.

5. JOHNSON & JOHNSON is, and at all times material hereto was, a corporation organized under the laws of the state of New Jersey, with it's principal place of business in New Jersey. Thus, for diversity purposes, Johnson & Johnson is a citizen of New Jersey. At all times material hereto, Johnson & Johson engaged in business in Texas but does not maintain a regular place of business or designated agent for service in Texas. The name and address of Johnson & Johnson's home or home office is One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, where Johnson & Johnson may be served with process by serving its Chief Executive Officer, Alex Gorsky.

6. JOHNSON & JOHNSON SERVICES, INC. is a corporation organized under the laws of the State of New Jersey, with its principal place of business in New Jersey. Thus, for diversity purposes, Johnson & Johnson Services, Inc. is a citizen of New Jersey. At all times material hereto, Johnson & Johson Services, Inc. engaged in business in Texas but does not maintain a regular place of business or designated agent for service in Texas. The name and address of Johnson & Johnson Servies, Inc.'s home or home office is One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, where Johnson & Johnson Services, Inc. may be served with process by serving its Registered Agent, Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

7. JOHNSON & JOHNSON INTERNATIONAL is a corporation organized under the laws of the State of New Jersey, with its principal place of business in New Jersey. Thus, for

diversity purposes, Johnson & Johnson International is a citizen of New Jersey. At all times material hereto, Johnson & Johson International engaged in business in Texas and Colorado but does not maintain a regular place of business or designated agent for service in Texas. The name and address of Johnson & Johnson International home or home office is One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933, where Johnson & Johnson International may be served with process by serving its Registered Agent, Johnson & Johnson, One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

8. Defendants DePuy Orthopaedics, Inc., DePuy, Inc., DePuy International Limited, Johnson & Johnson, Johnson & Johnsons Services, Inc. and Johnson & Johnson International shall also hereinafter be collectively referred to as "Defendants DePuy."

## Jurisdiction

9. This Court possesses Federal Diversity Jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy:

(a) exceeds the sum or value of $75,000.00, exclusive of interest and costs; and

(b) is between citizens of different states.

## Venue

10. Venue of this case is appropriate in the United States District Court for the Western District of Virginia. Plaintiff states that but for the Order permitting direct filing into the Northern District of Texas pursuant to Case Management Order No. 1, Plaintiff would have filed in the United States District Court for the Western District of Virginia. Therefore, Plaintiff respectfully requests that at the time of transfer of this action back to the trial court for further proceedings that this case be transferred to the above referenced District Court.

11. The United States District Court for the Western District of Virginia possesses venue of this civil action under 28 U.S.C. § 1391(a) because:

(a) jurisdiction of this civil action is founded only on diversity of jurisdiction; and

(b) is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**Statement of Facts Applicable to All County**

12. Plaintiff Stephen H. Briggs, is a resident and citizen of Dry Fork, Pittsylvania County, Virginia and claims damages as set forth below.

13. Plaintiff Stephen H. Briggs was implanted with a DePuy Pinnacle hip implant in his right hip on or about February 27, 2007 at Danville Regional in Danville, Virginia, by Kromo Campbell, M.D. During such surgery, a hip implant believed to be designed, manufactured and marketed by Defendants DePuy was implanted into Plaintiff right hip. Upon information and belief, Plaintiff believes such hip implant is identified as a DePuy Pinnacle metal-on-metal hip implant system.

14. Plaintiff Stephen H. Briggs was implanted with a DePuy Pinnacle hip implant in his left hip on or about August 6, 2007 at Danville Regional in Danville, Virginia, by Kromo Campbell, M.D. During such surgery, a hip implant believed to be designed, manufactured and marketed by Defendants DePuy was implanted into Plaintiff's left hip. Upon information and belief, Plaintiff believes such hip implant is identified as a DePuy Pinnacle metal-on-metal hip implant system.

15. Despite following his surgeon's instructions, Plaintiff Stephen Briggs began to experience pain in his left and right hips. Due to his ongoing pain and elevated metal levels in his blood, Plaintiff Stephen Briggs is in the process of scheduling a revision surgery.

16. Following his implant surgeries, Plaintiff has suffered, and continues to suffer, damages, including but not limited to, disfigurement, pain, suffering, mental anguish, lost earning capacity and medical expenses.

17. Defendants were in the business of designing, manufacturing, marketing and selling hip prostheses including the Pinnacle implant system implanted into Plaintiff Stephen Briggs in 2007.

18. Defendants sold the subject Pinnacle hip implant system to Plaintiff Stephen Briggs, or to his physician and/or healthcare provider, on his behalf.

19. The hip prostheses reached Plaintiff Stephen Briggs without substantial change from the time it left Defendants' possession and control.

20. The Pinnacle hip implant system was approved by the United States Food & Drug Administration ("FDA") under the substantially equivalent §510(k) method of obtaining approval to market a medical device.

21. The defendants by their actions or inactions, proximately caused Plaintiff's injuries.

22. The plaintiff could not have known that the injuries he suffered were as a result of a defect in the Pinnacle hip implants until after the date he began to experience pain and was found to have elevated metal levels in his blood.

23. As a result of the injuries and damages Plaintiff sustained, he is entitled to recover compensatory damages for pain and suffering, mental anguish, disfigurement, disability, loss of services, loss of consortium, lost earnings and/or lost earning capacity, and for other economic losses as well as punitive damages.

## COUNT ONE

For strict liability cause of action against Defendants, Plaintiff says:

24. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

25. The hip prosthesis contained a manufacturing, design or marketing defect, more particularly set forth below.

*Manufacturing Defect*

26. The components of the hip implant may have contained a manufacturing defect.

27. The components of the hip implant may have deviated, in its construction or quality, from the specifications or planned output.

28. As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur as to whether the components of the hip implant contained a manufacturing defect.

*Marketing Defect*

29. The components of the hip implant contained one or more marketing defects:

   (a) there was an inherent risk in the intended or reasonably foreseeable use of the components of the hip implant of a lack of bony ingrowth;

   (b) there was an inherent risk in the intended and/or reasonably foreseeable use of the Pinnacle hip implant system that it would shed excess metal debris that was dangerous and toxic in the human body;

   (c) there were inadequate warnings in that, among other things:

      (1) the warnings were not placed in a location to reasonably be expected to catch the attention of the user (surgeon);

      (2) the warnings failed to inform the user (surgeon) of the nature of the dangers, including lack of bony ingrowth and excess toxic metal debris generated during ordinary and foreseeable use;

    (c)    Defendant knew or reasonably foresaw (or should have known or reasonably foreseen) the above risks.

    (d)    Defendant failed to warn the surgeon (or to adequately warn the surgeon of the above risk), failed to instruct the surgeon (or failed to adequately instruct the surgeon) how to safely use the components of the hip implant, or both.

30. Among other things, Defendants should have truthfully represented that the components of the hip implant had a higher than normal risk of a lack of bony ingrowth and that the components, when put to ordinary and foreseeable use, would shed toxic metal debris in the hip joint.

*Design Defects*

31. The components of the hip implant contained one or more of the following design defects:

    (a)    the Pinnacle metal-on-metal implant system sheds toxic metal debris during normal articulation of the hip joint;

    (b)    the Pinnacle metal-on-metal implant system has a propensity for increased metal debris due to the geometry of the acetabular cup which increases the toxic system reaction and causes localized reactions including, but not limited to ALVAL and metallosis; and

    (c)    the Pinnacle metal-on-metal hip replacement system allows for metal-on-metal articulation between the metal femoral head and metal acetabular cup.

32. One or more of the following safer alternative designs for the components of the hip implant existed that would have prevented or significantly reduced the risk of Plaintiff's injuries and damages without substantially impairing the product's utility, and that was economically and technologically feasible at the time the components of the hip implant left Defendants' control by the application of existing or reasonably achievable scientific knowledge:

    (a)    a properly shaped acetabular cup;

    (b)    a ceramic acetabular liner to prevent metal-on-metal articulation; and/or

    (c)    use of a polyethylene liner for the acetabular cup to prevent metal-on-metal articulation.

*Unreasonable Dangerousness*

33.    The manufacturing and marketing defects, or any of them, rendered the the components of the hip implant unreasonably dangerous by making them dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics.

34.    The design defect or defects rendered the the components of the hip implant unreasonably dangerous as designed considering their utility and the risks involved in their use.

*Producing Cause*

35.    The above defects, or any of them, were producing causes of Plaintiff's injuries and damages, more particularly set forth below.

**COUNT TWO**

36.    Plaintiffs adopt by reference each and every Paragraph of the "Parties," "Jurisdiction," "Venue," "Statement of Facts Applicable to All Counts," and "Count One" of this Complaint as if fully copied and set forth at length herein.

37.    Defendants owed Plaintiff a duty of reasonable care. Defendants owed Plaintiff a duty to exercise care to discover dangerous propensities of the the components of the hip implant. Defendants owed Plaintiff a duty to exercise ordinary care in the design, production (manufacture) and sale (marketing) of the components of the hip implant.

38.    Defendants breached the duties it owed to Plaintiff, failed to exercise ordinary

care, and was negligent in the following particulars, among others:

    (a)    manufacturing and marketing the Pinnacle metal-on-metal hip replacement system when it shed toxic metallic debris upon articulation within the hip joint;

    (b)    manufacturing and marketing the Pinnacle metal-on-metal hip replacement system when it shed excess toxic metallic debris upon articulation within the hip joint;

    (c)    placing a hip prosthesis into the stream of commerce that had not been adequately tested;

    (d)    failing to properly test the Pinnacle metal-on-metal hip replacement system before marketing it as safe for implantation in the human body;

    (e)    failing to warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the hip prostheses could become loose;

    (f)    failing to warn consumers in general, and Plaintiff or his physicians specifically, of the risk that the hip prostheses would shed toxic metal debris upon articulation in its ordinary and foreseeable use;

    (g)    As more particularly set forth below, Plaintiff invokes the doctrine of res ipsa loquitur.

39. Each and every one of the foregoing acts or omissions, taken singularly or in any combination, proximately caused Plaintiff's injuries and damages, more particularly set forth below.

### Res Ipsa Loquitur

As a basis for application of res ipsa loquitur to this lawsuit, Plaintiff says:

40. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Petition as if fully copied and set forth at length herein.

41. The character of the incident made the basis of this lawsuit was such that it would not ordinarily occur without negligence; and

42. The components of the hip implant were under the management and control of

Defendants. Defendants were in control of the components of the hip implant at the time that the negligence (inferable from the incident made the basis of this lawsuit) occurred, so that the reasonable probabilities point to the Defendants and support a reasonable inference that Defendants were the negligent party.

43. Defendant has superior knowledge or means of information to determine the cause of the incident made the basis of this lawsuit.

44. By reason of the above and foregoing circumstances, among others, the jury is permitted to infer Defendant's negligence.

## COUNT THREE

For breach of express warranty cause of action against Defendants, Plaintiff says:

45. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

46. Defendant made one or more of the following affirmations of fact or promise, among others, to Plaintiff (or to Plaintiff's physician as an agent of Plaintiff; or to the public generally of which the Plaintiff is a part) which related to the hip prosthesis which became a part of the basis of the bargain:

    (a) that the Pinnacle metal-on-metal hip implant system would be safe for implantation into the human body;

    (b) that the Pinnacle metal-on-metal hip implant system would not generate toxic debris upon articulation after implantation;

    (c) that the Pinnacle metal-on-metal hip implant system would not have a high propensity of loosening;

    (d) that the Pinnacle metal-on-metal hip implant system would be safe and effective.

47. The following descriptions of the Pinnacle metal-on-metal hip implant system, among others, were made a part of the basis of the bargain (which, thus, created an express warranty that the hip prosthesis would conform to such description):

    (a)    that the Pinnacle metal-on-metal hip implant system would be safe for implantation into the human body;

    (b)    that the Pinnacle metal-on-metal hip implant system would not generate toxic debris upon articulation after implantation;

    (c)    that the Pinnacle metal-on-metal hip implant system would not have a high propensity of loosening;

    (d)    that the Pinnacle metal-on-metal hip implant system would be safe and effective.

48. The acetabular cup breached the above express warranties in the following particulars, among others:

    (a)    that the Pinnacle metal-on-metal hip implant system was not safe for implantation into the human body;

    (b)    that the Pinnacle metal-on-metal hip implant system generates toxic debris upon articulation after implantation;

    (c)    that the Pinnacle metal-on-metal hip implant system has a high propensity of loosening;

    (d)    that the Pinnacle metal-on-metal hip implant system is not safe and effective.

49. Plaintiff notified Defendant of the breach of the above express warranties within a reasonable time after Plaintiff discovered, or should have discovered, such breaches.

50. The foregoing breaches of warranties proximately caused Plaintiff's injuries and damages, more particularly set forth below.

## COUNT FOUR

For breach of implied warranty of merchantability cause of action against Defendants, Plaintiff says:

51. Plaintiff hereby adopts and realleges each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

52. Defendants are merchants with respect to Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement.

53. Defendant has not excluded or modified the implied warranty of merchantability.

54. The Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement were not merchantable for the following reasons, among others:

   (a) it was not fit for the ordinary purposes for which hip prostheses are used.

55. For the foregoing reasons, Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement breached the implied warranty of merchantability.

56. Plaintiff notified Defendant of the above breach of the implied warranty of merchantability within a reasonable time after Plaintiff discovered, or should have discovered, such breach.

57. The foregoing breach of warranty proximately caused Plaintiff's injuries and damages, more particularly set forth below.

## COUNT FIVE

For breach of implied warranty of fitness for a particular purpose cause of action against Defendants, Plaintiff says:

58. Defendants, at the time of the sale of the Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement, had reason to know the particular purpose for which

the hip prosthesis was required.

59. Defendant also knew at such time that Plaintiff was relying on Defendant's skill or judgment to select or furnish a suitable Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement.

60. Defendant did not exclude or modify the implied warranty of fitness for a particular purpose.

61. The Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement was not fit for the particular purpose for which Plaintiff required it.

62. For the foregoing reasons, the Pinnacle metal-on-metal hip implant system used in Plaintiff's hip replacement breached the implied warranty of fitness for a particular purpose.

63. The foregoing breach of warranty proximately caused Plaintiffs' injuries and damages, more particularly set forth below.

## Damages Applicable to All Counts

64. Plaintiff adopts by reference each and every Paragraph of the Statement of Facts Applicable to All Counts of this Complaint as if fully copied and set forth at length herein.

65. Plaintiff hereby adopts by reference each and every Count of this Complaint as if fully copied and set forth at length herein.

66. Plaintiff STEPHEN BRIGGS suffered sustained and incurred, and in reasonable medical probability will suffer, sustain and incur, the following injuries and damages as a producing or proximate result (or both) of Defendants' conduct, the defective hip prostheses, or both, among others:

(a) physical pain, past and future;

(b)  mental suffering, past and future;

(c)  physical impairment, past and future;

(d)  physical disfigurement, past and future;

(e)  reasonable and necessary medical bills, past and future;

(f)  loss of earnings/earning capacity, past and future;

(g)  reasonable and necessary attorneys' fees;

(h)  costs of court.

### Statute of Limitations

Plaintiff first discovered less than two years before the filing of this lawsuit that the acetabular cup had become loose and/or was shedding toxic metal debris. A reasonable person would not made such discovery until such time. Thus, the statute of limitations did not commence to running until less than two years before the filing of this lawsuit.

### Jury Demand

Plaintiff requests trial by jury.

### Prayer

Plaintiff prays that Defendants be cited to appear herein, and that upon final trial, Plaintiff has judgment against Defendants for the following, among other things:

1. Compensatory damages in an amount above the minimum jurisdictional limits of the Court;

2. Pre-judgment interest according to Virginia law;

3. Post-judgment interest according to Virginia law;

4. Costs of court;

5. Such other and further relief to which Plaintiff shows himself entitled to receive.

Respectfully submitted,
**Houssiere, Durant & Houssiere, LLP**


By:      /s/   Monica C. Vaughan
         Monica C. Vaughan
         State Bar No. 00794784
         mvaughan@hdhtex.com
1990 Post Oak Blvd., Suite 800
Houston, Texas 77056-3812
Telephone: (713)626-3700
Facsimile: (713)626-3709

ATTORNEYS FOR PLAINTIFF